**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ERIC WILLIAMS, | DOCKET NUMBER |
| Appellant, | AT-3443-06-0118-X-2 |
| v. | |
| DEPARTMENT OF THE AIR FORCE, | DATE: December 16, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Eric Williams, North Charleston, South Carolina, pro se.

Jonathan Lee Simpson, Robins Air Force Base, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The administrative judge issued a compliance initial decision finding the agency noncompliant with the Board's October 26, 2012 Final Order in the underlying appeals, MSPB Docket No. AT-3443-06-0118-B-1 and MSPB Docket No. AT-3443-06-0118-C-2.  For the reasons discussed below, we now find the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

agency in compliance and DISMISS the petition for enforcement. This is the final decision of the Merit Systems Protection Board in this compliance proceeding. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2      On October 26, 2012, the Board issued a Final Order in MSPB Docket No. AT-3443-06-0118-B-1 and MSPB Docket No. AT-3443-06-0118-C-2, requiring the agency to pay the appellant lost wages (with interest), benefits, and liquidated damages resulting from its willful violation of his Veterans Employment Opportunities Act rights. *Williams v. Department of the Air Force*, MSPB Docket No. AT-3443-06-0118-B-1, Nonprecedential Final Order at 4-5 (Oct. 26, 2012) (B-1 Final Order). On January 3, 2013, the appellant petitioned for enforcement, contending that the agency failed to comply with this order. MSPB Docket No. AT-3443-06-0118-C-3, Compliance File (CF), Tab 1. The appellant noted that the agency had failed to pay or explain its position regarding the following issues: military leave, annual leave, sick leave, overtime pay, back pay (lost wages), retirement fund, liquidated damages, and the provision of a Standard Form (SF) 50.[2] *See* CF, Tab 10, Compliance Initial Decision (CID) at 2. The administrative judge granted the appellant's petition for enforcement, found that the agency failed to provide proof of compliance on these issues and ordered it to do so within 20 days of its order. CID at 3-5. The administrative judge also ordered the agency to provide the name of the agency official responsible for compliance, pursuant to 5 U.S.C. § 1204(a)(2) and 5 C.F.R. § 1201.183(a)(5). CID at 5. The agency did neither.

---

[2] The appellant originally contended that the agency failed to provide an SF-15, but later stated that he meant to challenge the failure to provide an SF-50. MSPB Docket No. AT-3443-06-0118-X-2, Compliance Referral File (CRF), Tab 13 at 1.

¶3     On July 8, 2014, the Board issued an order to show cause, instructing the agency to file evidence of compliance.  CRF, Tab 8.  The agency and the individual the Board selected as the responsible agency official (in the absence of any designation by the agency) filed responses on July 29 and 31, 2014, respectively.  CRF, Tabs 11-12.  The appellant filed his response on August 5, 2014.  CRF, Tab 13.  On September 9, 2014, the Board issued an order requiring the agency to submit additional information.  CRF, Tab 15.  Both parties filed timely responses.  CRF, Tabs 17-19.  As explained below, we now find the agency compliant on all issues, decline to impose sanctions, and change the designation of the responsible agency official in accordance with the agency's request.

Standard

¶4     When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in, had the wrongful personnel action not occurred.  *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005).  The agency bears the burden to prove its compliance with a Board order.  An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence.  *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011).  The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance."  *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Back Pay/Lost Wages

¶5     The Board's previous orders found the appellant entitled to lost wages, with interest, from November 14, 2005 (the date of his unlawful nonselection), to March 11, 2009 (the date he declined the agency's offer to place him in the position at issue).  MSPB Docket No. AT-3443-06-0118-B-1, Remand File,

Tab 20, Initial Decision (B-1 ID) at 3-4, 6; *Williams v. Department of the Air Force*, [116 M.S.P.R. 245](), ¶ 17 (2011); B-1 Final Order at 3-4.   The agency submitted evidence that it paid the appellant a gross amount of $107,921.99 in lost wages for this period, less deductions, and including $13,420.47 in interest. CRF, Tab 11 at 5, 9, 58.   The agency's calculations included the promotions the administrative judge found the appellant would have earned.  *Id.* at 6; *see* B-1 ID at 4-6.   The appellant did not dispute the agency's calculations.   Accordingly, we find the agency in compliance with respect to lost wages and interest thereon.

Annual and Sick Leave

¶6        The agency stated that it paid the appellant a lump sum of $12,758.16 for annual leave he accrued and credited his retirement records to reflect that he earned 248 hours of sick leave.   CRF, Tab 17 at 4.   The agency explained its annual and sick leave calculations in a prior submission.   CRF, Tab 11 at 5-6. The appellant did not dispute the agency's calculations nor its statement that it paid him and updated his records.   Accordingly, we find the agency in compliance as to the appellant's annual and sick leave.

Liquidated Damages

¶7        The agency stated that it paid the appellant a lump sum of $65,749.91 as liquidated damages from April 15, 2008 (the date of agency's willful violation of the Board's order to reconstruct the selection process), to March 11, 2009 (the date the appellant declined placement in the position).   CRF, Tab 11 at 6; B-1 Final Order at 4.   The appellant did not dispute the agency's calculations or its statement that it had paid him this amount.   Accordingly, we find the agency in compliance regarding the liquidated damages.

Military Leave

¶8        The appellant asserted that the agency owes him military leave pay for the time he served on active duty between 2005 and 2009.   CRF, Tab 19 at 1-2.   He stated that, in each year, he would have taken military leave rather than another

type of leave. CRF, Tab 18 at 1. The agency contended that the appellant should not be paid for military leave because he did not actually use such leave, and employees are not compensated for unused military leave. CRF, Tab 17 at 5.

¶9        Military leave is intended to permit an employee to serve his military duty without loss of pay or time at his civilian position, up to 15 work days per calendar year. *See* 5 U.S.C. § 6323(a)(1). The appellant has not pointed to any actual loss of pay or time due to his military service between November 14, 2005, and March 11, 2009; nor could he, as he did not actually work at the agency during that time period, and his lost wages and benefits entitlements are based on a reconstruction of events.[3] The agency reconstructed the relevant time period without charging him military leave or annual leave in lieu of military leave and paid him for his unused annual leave. If he were now paid for military leave, he would receive a windfall because he, in effect, would receive double payment. Accordingly, we find the agency in compliance on this issue.

Retirement Fund (Thrift Savings Plan)

¶10       The agency stated that it worked with the appellant to process his Thrift Savings Plan (TSP) elections and catch-up contributions and deposited the required amounts. CRF, Tab 11 at 5. The appellant did not dispute these statements. Accordingly, we find the agency in compliance with respect to the appellant's TSP account.

Overtime Pay and Awards

¶11       The appellant contended that the agency failed to pay him overtime or awards during the back pay (lost wages) period. CRF, Tab 13 at 1-2. The agency

---

[3] In an earlier submission, the appellant asserted that he was entitled to military leave pay because the agency withheld his military pay from his lost wages award. CRF, Tab 14 at 1. The documents he submitted do not support this claim; however, it is unclear what part, if any, of the interim earnings withholding derives from his military pay. *See id.* at 3-4. The appellant therefore has not made "specific, nonconclusory, and supported assertions" sufficient to rebut the agency's evidence of compliance. *See Brown*, 113 M.S.P.R. 325, ¶ 5.

submitted evidence that employees in the position to which the appellant should have been appointed did not routinely work overtime; indeed, during the period at issue, only two employees worked overtime, and each on only one occasion. CRF, Tab 17 at 4-5. The agency asserted that it was therefore extremely unlikely that the appellant would have worked overtime. *Id.* The appellant did not challenge this assertion but contended that he should have received a notable achievement award because some employees in the position at issue received such awards. CRF, Tab 19 at 2; *see* CRF, Tab 17 at 5.

¶12 We disagree. Notable achievement and performance-based time off awards (which the agency states were given some employees), unlike overtime or night work, are highly variable and depend on the individual's performance. Because the appellant never actually worked in the position at issue, or in any other position with the agency, it is purely speculative to assume he would have earned a notable achievement or time off award. Moreover, even if we required the agency to grant him the average of the awards given to other employees, as is commonly done when calculating overtime, he would derive no monetary benefit. Notable achievement and time off awards are not cash awards, nor can they be converted to cash. *See* 5 C.F.R. § 451.104(f) (a time off award "shall not be converted to a cash payment under any circumstances"). We therefore find the agency in compliance on this issue.

SF-50

¶13 The appellant stated that the agency failed to provide him an SF-50 showing that he resigned his employment on March 9, 2011. CRF, Tab 19 at 2. The agency's submissions indicate that it generated such an SF-50, although it did not submit a copy to the Board. *See* CRF, Tab 11 at 42. Because there is no indication that the agency failed to create the appropriate paperwork, we find the agency compliant on this issue. The appellant should be able to obtain a copy of all of his SF-50s, including the resignation SF-50, through the agency's Human

Resources office and/or from the Employee Personnel Page. *See Employee Personnel Page*, https://www.nfc.usda.gov/epps/eplogin.aspx. If the appellant is unable to obtain the desired SF-50 from these sources and has reason to believe the agency, in fact, failed to create one, he may file another petition for enforcement on this issue.

Sanctions

¶14    On July 8, 2014, we ordered the agency to show cause why we should not impose sanctions, including an order that the responsible agency official not receive pay, for the agency's failure to submit any evidence of compliance as of that date. CRF, Tab 8 at 2. We noted that the agency had failed to respond, not only to the compliance initial decision, but to a subsequent order expressly requiring it to submit evidence of compliance. *Id.*

¶15    In response to the show cause order, the agency submitted the evidence of compliance discussed above and asserted that it had been substantially compliant well before the show cause order but had neglected to provide the relevant information to the Board. CRF, Tab 11 at 4. As explained above, we agree that the agency is now in compliance on all issues. We therefore decline to impose sanctions against either the agency or the responsible agency official. *See Martin v. Department of Justice*, 99 M.S.P.R. 59, ¶ 16 (2005) (The Board has held that the purpose of sanctions under 5 U.S.C. § 1204(e)(2)(A) is to obtain compliance and that, once compliance is achieved, sanctions are inappropriate), *aff'd*, 188 F. App'x 994 (Fed. Cir. 2006); *see also Smith v. Department of the Army*, 72 M.S.P.R. 676, 679 (1996) (same).

Responsible Agency Official

¶16    In the absence of any designation of a responsible agency official (despite multiple orders to submit such person's name to the Board), the Board identified John W. Snodgrass, Executive Director, Air Force Personnel Center, as the responsible agency official pursuant to 5 U.S.C. § 1204(a)(2) and (e)(2)(A).

CRF, Tab 8 at 2. Mr. Snodgrass filed a submission stating that he was not the appropriate official, CRF, Tab 12, and the agency identified Anthony Baumann, Director of Contracting, Air Force Sustainment Command, a member of the Senior Executive Service, as the appropriate official, CRF, Tab 11 at 7. We accept the agency's designation and will amend our records to note that Mr. Baumann, not Mr. Snodgrass, is the responsible agency official in this matter. For the reasons discussed above, we decline to impose sanctions against Mr. Baumann.

¶17     This is the final decision of the Merit Systems Protection Board in this compliance proceeding.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United

States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:           _____
                         William D. Spencer
                         Clerk of the Board

Washington, D.C.